# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JONATHAN M. OVERSTREET,            )
                                   )
                  Plaintiff,       )
                                   )
v.                                 )        Case No. CIV-15-368-RAW-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
                  Defendant.       )

## REPORT AND RECOMMENDATION

Plaintiff Jonathan M. Overstreet (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 5, 1969 and was 44 years old at the time of the ALJ's latest decision. Claimant completed his high school education with special education classes. Claimant has worked in the past as a forklift and front end loader driver, cement mixer cleaner, and cement block stacker. Claimant alleges an inability to work beginning July 8, 2009 due to limitations

resulting from depression, a learning disorder, and multiple knee
surgeries.

## Procedural History

On January 16, 2010, Claimant protectively filed for
disability insurance benefits under Title II (42 U.S.C. § 401, *et
seq.*) and for supplemental security income under Title XVI (42
U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's
applications were denied initially and upon reconsideration.  After
an administrative hearing, an Administrative Law Judge ("ALJ")
issued an unfavorable decision.  The decision was reversed by the
Appeals Council and remanded for further consideration.

On December 17, 2013, ALJ Bernard Porter conducted a second
administrative hearing by video with Claimant appearing in Fort
Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma.  On
April 4, 2014, the ALJ issued a second unfavorable decision.  The
Appeals Council denied review on August 17, 2015.  As a result, the
decision of the ALJ represents the Commissioner's final decision
for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential
evaluation.  He determined that while Claimant suffered from severe
impairments, he retained the RFC to perform a range of sedentary

work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant's impairments met a listing; (2) reaching an improper RFC; and (3) making inadequate findings at step five.

## Consideration of a Listing

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative joint disease of the left knee, sleep apnea, hypertension, obesity, borderline intellectual functioning, major depression, and generalized anxiety disorder. (Tr. 22). The ALJ concluded that Claimant retained the RFC to perform a range of sedentary work. In so doing, he found Claimant could lift, carry, push, and pull a maximum of 10 pounds occasionally and five pounds frequently with frequent handling, fingering, and feeling but was limited to the occasional use of hand controls with both upper extremities. Claimant could stand and/or walk for two hours of an eight hour workday and sit for six hours in an eight hour workday but required a sit/stand option to allow for a change in position at least every 30 minutes. Claimant was also limited to the occasional use of foot controls with the right lower extremity. He could occasionally climb ramps and stairs but should never climb ladders or scaffolds. He could

frequently balance, stoop, and crouch and occasionally kneel but should never crawl. Claimant was to avoid work at unprotected heights, around moving mechanical parts, and environments with temperature extremes. Claimant was limited to simple tasks and simple work related decisions with no more than frequent contact with supervisors, co-workers, and the public but would be off task 5% of the workday and would miss up to one day of work each month due to episodic symptomatology. (Tr. 25). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of order clerk, touch up screener, and optical goods assembler, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 34). As a result, the ALJ found Claimant was not disabled from July 7, 2009 through the date of the decision. Id.

Claimant first contends the ALJ failed to find he met a listing. Specifically, Claimant asserts that he meets the criteria for Listing 12.05(C) for mental retardation. Among the criteria for this Listing is a requirement that the evidence demonstrates or supports onset of the impairment before age 22, a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P,

App. 1 § 12.05.  On September 6, 2011, Claimant was evaluated by

Dr. Denise LaGrand, a licensed clinical psychologist.  Dr. LaGrand

found after administering the Wechsler Adult Intelligence Scale –

4th Edition that Claimant had a full scale IQ score of 71.  (Tr.

619).  In the subtests, Dr. LaGrand found Claimant scored Verbal

Comprehension – 80; Perceptual Reasoning – 71; Working Memory – 74;

and Processing Speed – 79.  (Tr. 619-20).  Dr. LaGrand stated that

Claimant's overall cognitive functioning is in the Borderline

Intellectual Functioning range.  "The differences among his scores

indicate that his Full-Scale IQ score is not an adequate

representation of his overall functioning, and individual strengths

and weaknesses need to be taken into account."  (Tr. 620).

Through this latter statement, Claimant attempts to assert

that Dr. LaGrand intended that his IQ score was actually lower than

the 71 she assessed.  Claimant's interpretation is misplaced.  The

more reasonable basis for this statement is that the individual

subtest scores are a true indicator of Claimant's intelligence

level, since this scores are somewhat higher than the Full Scale IQ

score.  In fact, Dr. LaGrand expressly stated that the Vocabulary

score was "often seen as most representative of overall functioning

. . . ."  (Tr. 620).  This score registered the highest among the

subtests at 80.  Id.  Thus, the required IQ score was not met for

this listing.

Moreover, the evidence does not support the additional required finding that Claimant have deficits in adaptive functioning. The ALJ noted that Claimant was able to pass the written test to obtain a driver's license and had performed semi-skilled work in the past. (Tr. 25). Dr. Robert Spray found Claimant was only mildly limited in adaptive functioning, save for responding and adjusting to the use of new and unfamiliar tools and/or machines where he was moderately limited. (Tr. 600). He also found Claimant to intellectually function in the average range. (Tr. 527). Dr. LaGrand's findings are also contrary to a finding of significant adaptive functioning deficits. (Tr. 620). This Court must conclude that Claimant has failed to meet the requirements for Listing 12.05(C).

## RFC Determination

In this category of alleged deficiencies in the ALJ's decision, Claimant states the ALJ erred in his evaluation of the opinion of his treating physician, Dr. Greg T. Jones. Dr. Jones expressed frustration with the disability process under which Claimant was proceeding. Dr. Jones stated that "I can state unequivocally that [Claimant] is fully disabled from anything but the lightest, nonambulatory, nonstressful job." (Tr. 518).

Dr. Jones completed a medical source statement dated November 30, 2011. He found Claimant could sit for up to 30 minutes at one time and for 3-4 hours in an eight hour workday; stand up to 15 minutes at a time and for 30 minutes in an eight hour workday; walk for ten minutes at a time and for 20 minutes in an eight hour workday. Claimant must use a cane and needs to take rest breaks at hourly intervals or less. He needs to alternate between sitting and standing every 15 minutes. Claimant can occasionally lift up to ten pounds and carry up to five pounds. He is limited in his left lower extremity and must elevate it when seated. He can occasionally push/pull, work in extended position and reach but never work above shoulder level or work overhead. Claimant can also never squat, crawl, stoop, crouch, kneel, and balance. (Tr. 629-30). He can never climb stairs, ladders or scaffolds. Claimant is to completely avoid unprotected heights, dangerous moving machinery, vibrating tools, exposure to extremes or frequent changes in temperature and humidity, exposure to IN respiratory irritants, and driving/riding in automotive equipment. (Tr. 631).

In a narrative statement, Dr. Jones wrote that Claimant had very real back and left leg pain and mechanical impairment of function, especially in the knee. He was restricted to simple acts of daily living requiring substantial rest and analgesics.

According to Dr. Jones, Claimant was unable to perform even sedentary work on a sustained basis, day in and day out with no prospect of sustained improvement. Id.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

supported by relevant evidence; (4) consistency between the opinion
and the record as a whole; (5) whether or not the physician is a
specialist in the area upon which an opinion is rendered; and (6)
other factors brought to the ALJ's attention which tend to support
or contradict the opinion.  Id. at 1300-01 (quotation omitted).
After considering these factors, the ALJ must "give good reasons"
for the weight he ultimately assigns the opinion.  20 C.F.R. §
404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th
Cir. 2004)(citations omitted).    Any such findings must be
"sufficiently specific to make clear to any subsequent reviewers
the weight the adjudicator gave to the treating source's medical
opinions and the reason for that weight."  Id.  "Finally, if the
ALJ rejects the opinion completely, he must then give specific,
legitimate reasons for doing so."   Watkins, 350 F.3d at 1301
(quotations omitted).

     The ALJ declined to give controlling weight to Dr. Jones'
opinion.  He fails, however, to state what weight he did give to
the opinion.   Dr. Jones' treatment notes give a longitudinal
picture of Claimant's continuing problems with his knee in
particular.  (Tr. 518).   On remand, the ALJ shall state the
specific weight provided to Dr. Jones' opinion and reconsider his
rejection of the vast majority of the limitations he found given

his treatment record.

Claimant also states that the ALJ improperly evaluated the opinion of Dr. Robert Spray.  This Court is particularly disturbed by the ALJ's statement that Dr. Spray was consulted not to obtain treatment but "through attorney referral and in connection with an effort to generate evidence for the current appeal.  Further, the doctor was presumably paid for the report." (Tr. 29).  This type of reasoning smacks of the old "treating physician's report appears to have been prepared as an accommodation to a patient" statement that has been roundly rejected as a basis for reducing the controlling weight normally afforded a treating physician's opinion.  <u>Miller v. Chater</u>, 99 F.3d. 972, 976 (10th Cir. 1996) citing <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir. 1987).  This is particularly troublesome when the report was generally consistent with that of Dr. LaGrand and Dr. Patricia Walz.  On remand, the ALJ shall re-evaluate Dr. Spray's opinion.

Claimant also challenges the ALJ's credibility findings.  It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such,

will not be disturbed when supported by substantial evidence.  <u>Id</u>.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. <u>Kepler</u>, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ methodically proceeded to cite the applicable legal standards for evaluating credibility, analyze Claimant's activities of daily living which are inconsistent with Claimant's testimony, and proceed through the medical record finding conflicts with the level of limitation to which Claimant testified concerning the location, duration, frequency, and intensity of his pain. The discussion contains thoughtful reasoning and careful consideration of the record. No error is found in this credibility analysis.

## Step Five Findings

Claimant contends the hypothetical questioning of the vocational expert was faulty because the RFC did not contain all of his restrictions. The ALJ is required to reassess the opinion evidence in this case and, in turn, reconsider his findings on the RFC. Should the RFC change, the ALJ shall re-evaluate the hypothetical questions posed to the vocational expert.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen

(14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE